IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**KENNY GIPSON**                                                                       **PLAINTIFF**

vs.                        NO. 3:19-CV-03050-TLB

**BRIAN DAVIS, Individually and in his**
**Official capacity as an employee of the**
**Baxter County Sheriff's Department;**
**MIKE HOLLAND, Individually and**
**in his Official capacity as an employee**
**of the Baxter County Sheriff's Department;**
**JOHN MONTGOMERY, Individually**
**and in his Official capacity as the Baxter**
**County Sheriff; and the BAXTER COUNTY,**
**ARKANSAS**                                                                          **DEFENDANTS**

<u>**PLAINTIFF'S STATEMENT OF MATERIAL**
**FACTS AS TO WHICH**
**A GENUINE DISPUTE EXISTS**</u>

COMES NOW the Plaintiff, by and through his attorney, John Ogles, and pursuant to Local Rule 56.1(b) submits the following as material facts and mixed issues of law and fact as to which a genuine dispute exists to be tried:

**Preliminary Statement**

Each of paragraphs set forth hereafter are based solely on events which occurred on September 6, 2018. Sgt. Davis will be referred to as "Davis," Officer Holland as "Holland" and Sheriff Montgomery as "the sheriff."

**The disputed facts and mixed issues of law and fact**

1. Plaintiff was not aggressive to mother either before the police arrived or after

1

they arrived.

2. Plaintiff was not aggressive toward Davis of Holland while they were all in Plaintiff's bedroom.

3. Plaintiff's mother never feared for her own personal safety.

4. Davis never feared for his own personal safety.

5. Holland never feared for his own personal safety.

6. Plaintiff, when told he could either go to jail or the hospital, agreed, in the presence of Davis and Holland, to go to the hospital.

7. Davis outweighs Plaintiff by approximately 100 pounds, or more.

8. Holland outweighs Plaintiff by a considerable amount.

9. Both Davis and Holland are much larger physically than Plaintiff.

10. Plaintiff did not jump off his bed and rush past Davis and Holland to get out of the bedroom. He got up and walked at a normal pace past them both.

11. Davis did not tell Plaintiff to stop while they were in the bedroom.

12. Holland did not tell Plaintiff to stop while they were in the bedroom.

13. Neither Davis or Holland made any effort to physically stop Plaintiff from leaving the bedroom, even though both were within a foot or two of Plaintiff.

14. After Plaintiff left the bedroom, he went down a hallway to the kitchen, walked through the kitchen to the door leading to the garage, opened that door and walked into through the garage and then began walking down the driveway.

15. Davis and Holland, another officer and Plaintiff's mother followed Plaintiff.

16. Neither Plaintiff or his mother heard Davis or Holland tell Plaintiff to stop.

17. At all times Plaintiff was walking at a normal pace and he never broke into a jog.

18. Holland tried to grab Plaintiff by the arm just as Plaintiff was leaving the garage and headed onto the driveway.

19. Plaintiff pulled himself loose from Holland's attempt to grab his arm and continued walking down the driveway.

20. Plaintiff never made a fist and never tried to strike Holland.

21. At no time did Davis tell Plaintiff he was under arrest.

22. At no time did Holland tell Plaintiff he was under arrest.

23. At no time did Davis warn Plaintiff that he would be tased if he did not stop walking away.

24 At no time did Holland warn Plaintiff that he would be tased if he did not stop walking away.

25. At no time did either officer warn the other their taser was about to be deployed.

26. Davis and Holland were of the opinion Plaintiff was under "profound agitation."

27. Davis and Holland knew Plaintiff had just been intoxicated on drugs.

28. Davis and Holland knew Plaintiff had suffered from chronic drug abuse.

29. Davis and Holland knew Plaintiff had some psychological issues.

30. Davis and Holland could have used a baton to stop Plaintiff.

31. Davis and Holland could have tackled Plaintiff to stop him.

32. Holland has known Plaintiff personally since childhood.

33. Holland knew Plaintiff to be a very docile person.

34. Three officers were present when Plaintiff left his bedroom. See County Policy 0075 G.1.

35. Neither Davis or Holland used "verbal commands in a firm, strong, authoritative voice to gain compliance and control of" Plaintiff. See County Policy 0075 G.2.

36. Neither Davis or Holland used soft hand controls, hard hand controls or pressure point applications for pain compliance on Plaintiff. See County Policy 0075 G.3.

37. If Plaintiff's walking away from Davis and Holland could be considered resistance, it would be considered passive or semi-active resistance, not physical resistance or physical non-compliance. See County Policy G.3 and 4.

38. County Policy 0075 only authorizes the use of a taser when the suspect is physically resisting detention or being taken into custody.

39. Plaintiff never threatened himself, Davis, Holland or anyone else with force which could result in physical injury.

40. The use of a taser on Plaintiff was improper under County Policy 077 "Procedures-Use on People" Section 6.a.

41. Plaintiff, Davis, Holland or others would not have been endangered if Davis or Holland had used physical force, such as hand controls, restraint holds, take-down maneuvers or by using a baton.

42. The use of a taser on Plaintiff was improper under County Policy 077 "Procedures-Use on People" Section 6.b.

43. At no time did Davis or Holland attempt to use means of lesser or equal force compared to the taser.

44. The use of a taser on Plaintiff was improper under County Policy 077 "Procedures-Use on People" Section 6.c.

45. County Policy prohibits a taser being used punitively or for the purpose of coercion, but only as a way of averting a potentially injurious or dangerous situation. County Policy 077 "Procedures-Use on People" Section 9.

46. It was not reasonable to believe a "potentially injurious or dangerous situation" existed when Plaintiff was walking down his own driveway away from David and Holland.

47. Neither Davis or Holland shouted "TASER! TASER! TASER!" prior to firing their respective tasers. This violates County Policy 077 "Procedures-Use on People" Section 13.

48. The taser training materials state "Avoid simultaneous [taser] exposures." Davis and Holland used their tasers simultaneously.

49. The taser training materials state officers should void using a taser upon a

person who is running, in motion, or moving under momentum.   Plaintiff was in motion and according to Davis and Holland was "jogging."

50.   The taser training materials state that where there is no intentional immediate threat or flight risk involving person in need of medical assistance due to mental health, drugs or illness the "Officer should make greater effort to control situation through less intrusive means" than a taser.

51.   The taser training materials teach the officers that legal precedent requires that a person must be given a reasonable opportunity to comply with directives before being tased, must conclude, reasonably, that a suspect is not capable of volitional compliance to commands, that it must be reasonable to conclude a suspect is "actively resisting" and that the officers "must give a warning of imminent application of force."

52.   Davis and Holland violated all of the don'ts in their training materials, yet the sheriff found nothing improper about their actions, instead condoning those improper acts.

53.   Holland admitted he had used tasers in the past.

54.   Holland always chose the use of a taser as his first option unless he didn't have his taser with him.

55.   According to county policies and the training materials, tasers are seldom, if ever, to be the first choice and the facts in this case certainly do not justify it is as the first choice.   The sheriff either failed to properly train Davis and Holland with respect to county policies on the use of force and tasers or he was deliberately indifferent to the fact

his officers saw taser use as the easiest method of taking a suspect into custody even when other means would be more appropriate.

WHEREFORE, premises considered, when the above facts, most or all of which are disputed by Defendants, are proven to the satisfaction of the jurors' entry of judgment against all of the Defendants would be appropriate. Further, it is for the jury to judge the credibility of the witnesses and the weight to be given the evidence and the disparities in the evidence between Plaintiff and the Defendants renders summary judgment absolutely improper.

John Ogles
Ogles Law Firm, P.A.
Arkansas Bar No. 89003
Texas Bar No. 00797922
200 S. Jeff Davis
PO Box 891
Jacksonville, AR 72078
501-982-8339
Facsimile 501-985-1403
jogles@aol.com
